UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MAURICE JILES,

    Plaintiff,

v.

SOUTHERN DESERT CORRECTIONAL CENTER ET AL.,

    Defendant.

Case No. 2:15-cv-00317-RFB-GWF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Before the Court for consideration is Defendant's Motion for Summary Judgment. ECF No. 34. For the reasons discussed below, Defendant's motion is granted as to Plaintiff's unsafe prison conditions claim, but denied as to Plaintiff's excessive force claim and Defendant's qualified immunity argument.

## II. BACKGROUND

Plaintiff Maurice Jiles, proceeding pro se in this action, was formerly incarcerated at Southern Desert Correctional Center ("SDCC"). Jiles brought an action under 42 U.S.C. § 1983 against Defendants SDCC, Officer Roberson ("Roberson"), and Warden Brian Williams ("Williams") alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants were named in their individual and official capacities. On September 8, 2015, the Court screened Plaintiff's complaint and dismissed the claims against SDCC and Williams. ECF No. 2. This screening order also allowed Plaintiff to file an Amended Complaint.

ECF No. 2. On October 9, 2015, Plaintiff filed his Amended Complaint. ECF No. 4. On December 4, 2015, the Court screened Plaintiff's Amended Complaint. ECF No. 5. The Court allowed Plaintiff's unsafe prison conditions and excessive force claims to proceed, but dismissed Plaintiff's violation of access to the courts claim. ECF No. 5. On February 5, 2016, while the case was stayed, an unsuccessful Early Mediation Conference took place. On March 3, 2016, Plaintiff's application to proceed in forma pauperis was granted. ECF No. 11. On June 17, 2016, this Court granted Defendant Roberson's proposed scheduling order, with the close of discovery being on December 13, 2016. ECF No. 21. On February 13, 2017, Defendant filed this Motion for Summary Judgment. ECF No. 34.

**III.    UNDISPUTED AND DISPUTED FACTS**

The Court finds the following facts to be undisputed. Plaintiff was an inmate in Nevada Department of Corrections ("NDOC") custody at SDCC housed in Unit 3 during the alleged search in this case. Roberson is a Senior Correctional Officer at SDCC who was assigned to Plaintiff's housing unit during the alleged event in the Complaint. Roberson is required to conduct a certain number of cell searches and compliance checks pursuant to SDCC General Population Housing Unit Post Orders. SDCC policy requires at least three random cell searches within each housing wing, for each day and swing shift. On or about June 1, 2014, Roberson was conducting a search in Plaintiff's housing wing. Roberson restrained Plaintiff during the search. Plaintiff met with medical staff on multiple occasions following the alleged incident during the search; however, each of these visits was for shingles, eye appointments, or medication refills.

Further, Plaintiff was written up for two counts of fighting on August 19, 2015 – over 14 months after the search took place. Plaintiff got into a fight with nonparty inmate Phillip Moorehead ("Moorehead"). There is no other allegation of a fight taking place in the interim between the June 1, 2014 search and the August 19, 2015 fight. Plaintiff was transferred out of SDCC Unit 3 on September 18, 2014, and was transferred six times between the date of the search and the fight. Moorehead was not in NDOC custody until June 5, 2014 (4 days after the search), and was transferred from High Desert State Prison to SDCC on July 31, 2014. Prior to being in

NDOC custody, Moorehead was in custody at Clark County Detention Center. Plaintiff and Moorehead were placed in the same housing unit on May 13, 2015.

The parties in this case disagree on certain material facts. In his Amended Complaint (ECF No. 4), Plaintiff alleges the following: during the June 1, 2014 search, Roberson struck Plaintiff and banged his head against the wall after handcuffing him during the search. Plaintiff alleges that Roberson's use of force was unprovoked and unnecessary as he was complying with Roberson's directions. Roberson stated to Plaintiff that he would kill Plaintiff and get away with it. Roberson stated to Plaintiff that he was "a slave" to Roberson. Roberson called out that Plaintiff was a "snitch" in a manner that other inmates could hear. Roberson denies these facts in his motion for Summary Judgment (ECF No. 34), and raises the following factual disputes in his declaration: Plaintiff was visibly frustrated and verbally combative during the search. Plaintiff "shoulder checked" Roberson as he was being taken out of his cell. Roberson requested Plaintiff be moved so that he could "cool down," resulting in Plaintiff being moved out of the unit for 45 minutes while the search was completed.

**IV. LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). "The court need consider only the cited materials, but it may consider other materials in the record." FRCP 56(c)(3).

When a litigant "is pro se, we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and

correct." Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). "A verified complaint may be used as an opposing affidavit under Rule 56." Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). To function as an opposing affidavit, the verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence. Id. The allegations cannot be "based purely on [a litigant's] belief." Id. If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (quotation marks omitted).

**V.   DISCUSSION**

Defendant moves for summary judgment as to Plaintiff's unsafe prison conditions and excessive force claims. Defendant also argues that he is entitled to qualified immunity.

   *A.  Unsafe Prison Conditions*

Defendant moves for summary judgment on Plaintiff's unsafe prison conditions claim, arguing that Valandingham is distinguishable from the case at hand because Roberson did not promulgate a plan to label Plaintiff a "snitch" and Plaintiff did not allege any specified fear or harm. Plaintiff argues that Roberson yelling Plaintiff was a "snitch" so that other inmates on the tier could hear resulted in Plaintiff getting into fights.

Under the Eighth Amendment "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citation omitted). A claim for unsafe prison conditions requires that the prison official acted with "deliberate indifference" and subjected the prisoner to "substantial risk of serious harm." Id. at 834. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed

to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." Lemire v. California, 726 F.3d 1062, 1074 (9th Cir. 2013); see also Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). A prison official labeling a prisoner a "snitch" can "violat[e] [a prisoner's] right to be protected from violence while in custody[,]" and thus support a cause of action under section 1983. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). In Valandingham, the inmate alleged that a prison official labeled him a "snitch" intending to have plaintiff killed by other inmates. Id. The plaintiff in Valandingham alleged that as a result of this conduct, fellow inmates approached and threatened him with harm. Id.

In viewing all facts and drawing all inferences in the light most favorable to Plaintiff, there is genuine issue of material fact as to whether Roberson actually called out that Plaintiff was a "snitch" in a manner that other inmates could hear. Defendant alleges that this event never took place, however, in his Amended Complaint, Plaintiff alleges that Roberson yelled out snitch "so that the rest of the inmates on the tier could hear him." The Ninth Circuit found similar conduct in Valandingham to constitute deliberate indifference under section 1983. Moreover, Valandingham is not distinguishable on the basis that Roberson allegedly yelled out Plaintiff was a snitch, rather than attempting "to promulgate a rumor that the inmate was a snitch" as the official in Valandingham did. Deliberate indifference simply requires that an official "knows of and disregards an excessive risk to inmate health or safety"— the manner in which an official carries out such conduct is irrelevant. Further, Valandingham is not distinguishable because Plaintiff has alleged specific fear of retaliation and harm. Plaintiff has stated during discovery that the snitch comment resulted in a fight and that the comment caused "hardship on [his] everyday survival in prison."

However, there is no genuine dispute as to any material fact regarding whether Roberson's alleged comment was the actual and proximate cause of any harm Plaintiff suffered. Plaintiff does not make any allegation of a fight taking place in his Amended Complaint. And the only alleged

fight that Plaintiff can rely on to support his claim is his fight with Moorehead that took place almost six months after he commenced this action, and over one year after Roberson's alleged comment. Moreover, Moorehead was at CCDC and not in NDOC custody when the comment was made, Plaintiff was transferred to different housing units six times between the date of the comment and the fight, and Plaintiff does not point to any evidence demonstrating Moorehead had knowledge of Roberson's comment. Therefore, Plaintiff cannot show that Roberson's comment was the actual or proximate cause any violence he suffered in SDCC. Accordingly, Defendant's motion for summary judgement is granted as to Plaintiff's unsafe prison conditions claim.

### B. Excessive Force Claim

Defendant moves for summary judgment on Plaintiff's excessive force claim arguing that Plaintiff's claim fails because Roberson's *de minimis* use of force was done in good faith. To this point Defendant argues that the extent of Plaintiff's injuries is minimal, force was needed during the search, and Roberson tempered the severity of force used. Plaintiff argues that Roberson's force was excessive because he banged Plaintiff's head against the wall after he was restrained during the search.

The Eighth Amendment forbids cruel and unusual punishment. In an excessive force case, prison officials violate the Eighth Amendment if they cause "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations and quotation marks omitted); see also Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Courts consider five factors in making this determination: (1) the extent of the injury suffered by the inmate; (2) the need for the use of force; (3) the relationship between the need and the level of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to mitigate the severity of the force used. Furnace, 705 F.3d at 1028-29 (citation and quotation marks omitted).

#### 1. **Extent of Injuries**

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citation and quotation marks omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). An inmate need not suffer significant or long lasting injuries. Id. In Hudson, the inmate suffered "bruises, swelling, loosened teeth, and a cracked dental plate" – the extent of these injuries indicated more than a *de minimis* use of force. Id. However, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citation omitted). "The extent of injury may also provide some indication of the amount of force applied." Id. at 37. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id. at 38.[1]

There is a genuine dispute as to material facts regarding the extent of Plaintiff's injuries. Plaintiff alleges that Roberson struck him, and banged his head against the wall, but it is unclear to what extent Plaintiff was allegedly injured. It is true that the record does not indicate Plaintiff ever sought medical treatment for any alleged injuries. However, this failure to seek treatment does not necessarily mean Plaintiff suffered no injuries. Moreover, even if Plaintiff's injuries were *de minimis*, this does not mean Roberson's use of force was also *de minimis*. The Court in Wilkins pointed out that injury and force "are only imperfectly correlated, and it is the latter that ultimately counts." 559 U.S. at 38. Plaintiff escaping an alleged incident without any serious injury does not preclude an excessive force claim. Roberson allegedly striking Plaintiff and banging his head against the wall can constitute excessive force nonetheless, if such force was unneeded. Because of genuine issues of material fact, the first Hudson factor weighs in favor of Plaintiff.

### 2. **The Need for Force**

"Prison administrators . . . should be accorded wide-ranging deference in the adoption and

---

[1] To the extent that Plaintiff asserts a claim for mental or emotional harm, under The Prison Litigation Reform Act ("PLRA"), he must suffer more than *de minimis* physical harm. See Keller, 289 F.3d at 627. PLRA dictates that an inmate may not bring a civil claim "for mental or emotional harm suffered while in custody without a prior showing of physical injury[.]"42 U.S.C. § 1997e(e). The alleged injury need not be significant, but it must be more than *de minimis*. Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002). Plaintiff has failed to show more than *de minimis* harm thus far.

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (alteration in original) (citation and quotation marks omitted).

Defendant argues that the use of force was needed because Plaintiff had become visibly frustrated and verbally combative during the cell search. In Plaintiff's version of the facts, he states that Roberson asked him "what the hell is wrong with you" upon entering his cell, and that he replied "you." While deference is to be afforded prison officials, no such difference would extend to an unprovoked and wanton infliction of force or injury as alleged here by the Plaintiff. As there is a genuine issue of disputed fact as to whether Roberson was confronted by Plaintiff or was even faced with a situation requiring the use of force, this factor weighs in favor of Plaintiff for purposes of this motion.

### 3. **The Relationship Between Need and Level of Force Used**

In determining whether there is an Eighth Amendment violation a court looks for "malicious and sadistic force, not merely objectively unreasonable force." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002) (citation omitted). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319.

There is a genuine dispute of material fact as to the relationship between the need and the level of force Roberson used. Plaintiff in his Amended Complaint alleges that Roberson hit him, and banged his head against the wall. See ECF No. 4. However, Defendant states in its motion for summary judgment that "Roberson did not strike Jiles during the search or during the process of restraining him." See ECF No. 34. Because the level of force Roberson used is in dispute, the relationship between it and the need for force cannot be determined. Accordingly, the third Hudson factor weighs in favor of Plaintiff for purposes of this motion.

### 4. **The Threat Reasonably Perceived by the Responsible Officers**

"[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley, 475 U.S. at 320. "[This] does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." Id. at 322.

There is also a genuine issue of disputed fact as to the "threat" perceived by Roberson. Roberson argues that he was provoked and confronted by Plaintiff verbally and physically. Plaintiff asserts that there was no such confrontation or provocation. As there is a genuine issue of disputed fact, this factor weighs in favor of Plaintiff for purposes of this motion.

### 5. **Efforts Made to Mitigate Severity of Force Used**

The effort to mitigate the severity of force used here depends on what version of the facts is taken. Plaintiff alleges in his Amended Complaint that he was hit and had his head was banged against the wall *after* he was already restrained in handcuffs. Whereas, Defendant states that this did not occur, and instead Plaintiff was moved to another area to "cool down" after being handcuffed. Therefore, there is a genuine dispute of material fact as to whether Defendant took efforts to mitigate the severity of force used against Plaintiff. Thus, this factor weighs in favor of Plaintiff.

Accordingly, as the Wilkins court instructed, it is force, not injury, that is the central focus of an excessive force determination. The Hudson factors account for this by balancing the force used with the exigencies of a particular situation. To this point, based on genuine issues of material fact, each of the Hudson factors weigh in Plaintiff's favor. Therefore, the Court denies Defendant's motion for summary judgment as to Plaintiff's excessive force claim.

### *C. Qualified Immunity*

Defendant argues that Plaintiff has failed to identify what clearly established law Roberson's conduct violated, and therefore, Defendant is entitled to qualified immunity. "The

doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation omitted). Qualified immunity is immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. (citation omitted).

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (citation and quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). This ensures that the law has given officials "fair warning that their conduct is unconstitutional." Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013) (citation and quotation marks omitted). Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al-Kidd, 131 S. Ct. at 2084. The plaintiff bears the burden of proving that the right was clearly established. Tarabochia, 766 F.3d at 1125.

In deciding a claim of qualified immunity where a genuine dispute of material fact exists, the court accepts the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor . . . ."). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metro. Police Dept., 756 F.3d 1154, 1160 (9th Cir. 2014).

1 First, Plaintiff's version of the facts establishes that Roberson's conduct violated a constitutional right. Again, under Hudson, excessive force claims center on whether the extent of force an officer uses was needed given the exigency of a situation. Beating an inmate after he has already been handcuffed is not in accord with this framework. See Hudson, 503 U.S. at 4 (inmate was placed in handcuffs, then punched and kicked by officers); Lolli v. County of Orange, 351 F.3d 410, 416 (9th Cir. 2003) (Plaintiff was beaten, placed in handcuffs, and then struck ten more times after being handcuffed); Alexander v. Perez, 124 Fed. Appx. 525 (9th Cir. 2005) (inmate was placed in handcuffs, then slammed against wall twice, punched, and had his leg twisted). Here, Plaintiff alleges that Roberson placed him in handcuffs, then struck him and banged Plaintiff's head against the wall. Accordingly, under this version of the facts, Roberson violated a constitutional right, and therefore the first qualified immunity prong is satisfied.

Second, this right was clearly established at the time of the alleged event giving rise to Plaintiff's excessive force claim. Since Hudson in 1992 "the law regarding a prison guard's use of excessive force was clearly established[.]" Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003). An "unnecessary and wanton infliction of pain" constituted excessive force under the Eighth Amendment by this time. Id. at 1184 (citation and quotation marks omitted). Roberson's alleged conduct took place in 2014, thus by this time it would be clear to a prison official that restraining an inmate in handcuffs, and then subsequently striking him and banging his head against the wall would be unlawful. Therefore, Plaintiff's right to not be subjected to the alleged conduct in this case was clearly established at the time the alleged incident took place. Accordingly, Defendant is not entitled to qualified immunity.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's unsafe prison conditions claim.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiff's excessive force claim.

Dated: May 9, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**